**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 20 2008

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

This case assigned to District Judge _____
and to Magistrate Judge _____

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

LEROY SANDERS; STACY ASHCRAFT; JULEE PRATT;
DOROTHY BAILEY; JOHN BANKS; JAMES BENNETT; JASON
BOTTOMS; BARBARA BOTTOMS; RANDAL BRANNUM;
TREVA BRANNUM; JACK BRATTON; MARLENE BURKS;
LISA BURTON; WILLIAM CHANEY; BILLY CHASTEEN;
SHERRY CHASTEEN; KENNETH COOPERWOOD; GARRETT
W. DAVIS; LAKESHA DECKER; DAVID DEGRANDCHAMP;
DEBRA ANN DOZIER; LENORA DRIVER; MESHELL DUFFY;
RANDALL ELIGH; MARLENA R. ENGLISH; MARTEZ FREEMAN;
RANDAL FROLOS; TWYLA GLASS; DELMA GOODLOW; APRIL C.
HEFNER; DEBRA C. HOOFMAN; ANDREA M. HUHN; THOMAS M.
HYDE; ROGER JOHNSON; ANTONIO KING; JEFF S. LADD;
JAMES F. MARTIN; CAROL MCCOY; JAMAL MCCOY; AMY
MCDANIELS; JOHN B. MERIWEATHER; BRIAN MILLER; JERRI
ANN MILLER; LONNIE RAY MILLER; ZACK MITCHELL; AMBER L.
MOON; JENNIFER MORRIS; PRESTON M. MORRIS; MARCUS
MURRAY; ROBERT NEAL; BRENDA NEVELS; TERRY NEWNUN;
JON NICHOLSON; ANDRETTE D. PENN; CLAUDIA PEYWATER;
JESSICA POYNER; CHRIS PRUITT; CLAUDIA REYNOLDS; MARK
RUNIONS; WILLIAM SCRUGGS; FOSTER SIMS; BRYAN SMITH;
DIANE STACY; SCOTT STEPHENS; ANTWAN SULLIVAN; DOROTHY
THOMPSON; KRISTIE THRASHER; CHERYL WALKER; RAMONA
WALKER; WASZELL WATSON; DEBBIE WIGGINS; JIM WINNER;
BARBARA WOODARD AND BARBARA WREN

**PLAINTIFFS**

v.                    NO. _____

4·08-CV-00222 SWW

KOHLER CO.

**DEFENDANT**

## COMPLAINT

Come now the Plaintiffs, Leroy Sanders, Stacy Ashcraft, Julee Pratt, Dorothy Bailey, John

Banks, James Bennett, Jason Bottoms, Barbara Bottoms, Randal Brannum, Treva Brannum, Jack

Bratton, Marlene Burks, Lisa Burton, William Chaney, Billy Chasteen, Sherry Chasteen, Kenneth

Cooperwood, Garret W. Davis, Lakesha Decker, David Degrandchamp, Debra Ann Dozier, Lenora

Driver, Meshell Duffy, Randall Eligh, Marlena R. English, Martez Freeman, Randal Frolos, Twyla

Glass, Delma Goodlow, April C. Hefner, Debra C. Hoofman, Andrea M. Huhn, Thomas M. Hyde, Roger Johnson, Antonio King, Jeff Scott Ladd, James F. Marting, Carol McCoy, Jamal McCoy, Amy McDaniels, John B. Meriweather, Brian Miller, Jerri Ann Miller, Lonnie Ray Miller, Zach Mitchell, Amber L. Moon, Jennifer Morris, Preston Morris, Marcus Murray, Robert Neal, Brenda Nevels, Terry Newnun, Jon Nicholson, Andrette D. Penn, Claudia Peywater, Jessica Poyner, Chris Pruitt, Claudia Reynolds, Mark Runions, William Scruggs, Foster Sims, Brian Smith, Diane Stacy, Scott Stephens, Antwan Sullivan, Dorothy Thompson, Kristie Thrasher, Cheryl Walker, Ramona Walker, Waszell Watson, Debbie Wiggins, Jim Winner, Barbara Woodard, and Barbara Wren by and through their attorneys, Wilcox Lancaster & Lacy, PLC, and for their Complaint against Defendant, Kohler Company, state as follows:

## PARTIES, JURISDICTION AND VENUE

1.      This is an action arising under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. ("WARN") and Arkansas common law to redress wrongful terminations, fraud, unjust enrichment, breach of contract, promissory estoppel and civil conspiracy, and to recover costs and attorneys' fees.

2.      This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 2104(a)(5). Additionally, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3.      Plaintiffs are individuals who were permanent, full-time employees of Kohler until wrongfully terminated on March 6, 2008. Plaintiffs are properly joined pursuant to Fed. R. Civ. P. 20 in this action as they are asserting a right to relief arising out of the same transaction and occurrence and questions of both law and facts common to all Plaintiffs arise herein.

2

4.      Defendant Kohler Co. ("Kohler") is a foreign corporation with its principal place of business located in a state other than Arkansas. Kohler operates a plant (the "site") in White County, Arkansas. Kohler's registered agent for service of legal process is The Corporation Company, 124 West Capitol Ave., Little Rock, AR 72201.

5.      Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b) in that this is the district in which the Defendants resides, and it is the district in which a substantial part of the events giving rise to Plaintiffs' claims occurred.

**GENERAL ALLEGATIONS**

6.      Kohler is a private for-profit company which employs more than one hundred full-time employees and more than 100 workers who work at least a combined 4,000 hours per week in the state of Arkansas at its factory located in Searcy, White County, Arkansas. As such, Kohler is an "employer" subject to the provisions of 29 U.S.C. § 2101 et seq. and more specifically the provisions of the Workers' Adjustment and Retraining Notification (WARN) Act, Public Law 100-379, as codified by the Code of Federal Regulations, including 20 CFR part 639.

7.      Plaintiffs are individuals who were permanent, full-time employees at Kohler's Searcy plant and are entitled the full protection of the WARN Act.

8.      Each of the Plaintiffs was hired by Kohler after Kohler's union workforce at the Searcy facility quit work to participate in a union strike.

9.      Each of the above referenced Plaintiffs were hired by Kohler for permanent, full-time positions to replace the striking union workers at the Searcy site.

10.     The very large majority of the workforce at the Kohler Searcy site were members of United Auto Workers (UAW) Local 1000. On December 9, 2006, 220 workers/ union members

3

voted to go on strike.

11.    The striking workers constituted virtually the entire workforce of Kohler's Searcy operations. Recognizing that its production would come to a halt, Kohler immediately began actively recruiting replacement employees to cross the strike picket line.

12.    In this recruitment, Kohler representatives made promises and representations of permanent, full-time employment with Kohler, including full benefits, intended to induce the replacement workers to take positions with Kohler. These replacement workers were induced to leave other jobs, decline other employment opportunities, incur significant risk in crossing the picket line, and then subject themselves to constant harassment, mistreatment, insult and physical violence at the hands of the union workers.

13.    The replacement workers were additionally faced with many uncertain circumstances in replacing union workers and filling these workers' previous positions. For example, the replacement workers were faced with critical financial and health decisions, such as financing for homes and automobiles, health insurance issues and many other issues.

14.    In order to induce these replacement workers to become Kohler employees, Kohler specifically and repeatedly promised the replacement workers that their positions were permanent. See e.g. Exhibits 1, 2, and 3. In fact, Kohler specifically promised the replacement workers that their positions were not only permanent, but that they would not be replaced by striking workers should those striking workers elect to end their strike.

15.    Based upon these representations and inducements, Kohler secured approximately 140 replacement workers for permanent positions at the Searcy Kohler facility. Each of the above name Plaintiffs were replacement workers as described above.

4

16.     Due to the union strike, Kohler recognized that the continued operation of its Searcy facility would be in serious jeopardy without the efforts of the replacement workers.  In order to continue the normal and uninterrupted operations of the plant (and the operating income and profits derived therefrom),  Kohler lied and misrepresented its intentions with respect to the status of the above referenced Plaintiffs in order to induce said Plaintiffs' initial and continued employment with Kohler and to continue production and prevent a shutdown of the facility's operations.

17.     Specifically, Kohler misrepresented that the Plaintiffs would be permanent employees entitled to full benefits, and that Plaintiffs would not be displaced in order to create job openings for the strikers to return.  Kohler's statements were false and misleading, were made with the intent to deceived and to induce the Plaintiffs into taking employment with Kohler to their detriment, and were known to be false when made.

18.     Additionally, the statements by Kohler that all replacement workers who took a position with Kohler would be considered permanent employees and would not be released from employment in order to create job openings for the strikers to return was a unilateral contract offer that was accepted by the above Plaintiffs through their employment.  Kohler's termination of the above-referenced Plaintiffs in order to create job openings for the strikers to return is a breach of the contract entered into between the parties and entitles Plaintiffs to recover all damages associated with said breach, as well as all attorneys' fees and costs.

19.     Kohler representatives repeatedly made representations to Plaintiffs that the positions were permanent. The above Plaintiffs were also promised that they would not lose their jobs should the striking workers end their strike and that they would not be released from employment in order to create positions for the striking workers to return.

5

20.     Due to the replacement workers' reliance on these representation in taking these positions with Kohler, the plant continued operations uninterrupted and earned a substantial operating income and profit for over one year while the union was on strike.

21.     On March 6, 2007, Jerry Stone (plant manager) and Mary Johnson (human resource manager) of Kohler circulated the following written representation to the above referenced Plaintiffs:

> On behalf of the entire management team, I would like to thank you again for your efforts and your dedication to Kohler Co.'s Searcy operation. We are very pleased to have you as part of the Kohler organization. Working together, the plant clearing has a very bright future.
>
> On this note, some of you have raised the question on your status with the company. So I wanted to take this opportunity to answer that question for all of you. **Kohler Co. is taking the position that all of you have the status of permanent replacement workers because the strike called by UAW is an economic strike. What this means is that if and when this economic strike comes to an end, the company will not release you from employment in order to create job openings for the strikers to return to.**

Exhibit 1. (Kohler 12) (Emphasis added).

22.     This written promise was in addition to the previous oral promises made to the above referenced Plaintiffs by Kohler intended to induce those Plaintiffs to leave or forego other employment opportunities with the expectation of a long term future as a permanent employee of Kohler's Searcy site. Kohler continued to make representations of permanent employment and job security to the above referenced Plaintiffs to induce them to take positions with and continue positions with Kohler. These statements were both oral and in writing.

23.     In addition to Exhibit 1, an example of the written promises and inducements is attached hereto as Exhibit 2 (Kohler 15) which includes the statement "Kohler Company is a remarkable company where many associates spend their entire careers. I hope that you find your job

6

rewarding so that you will stay at Kohler for a long time." (August 16, 2007 letter from Brian R. Drescher).

24.     An example of the oral promises and inducements is confirmed in writing in an e-mail attached hereto as Exhibit 3 (Kohler 52) in which the plant manage (Jerry Stone) directs the supervisors of the replacement workers as follows: "I have heard the rumors on the floor. Basically, the rumor is that the strike has been settled and that the strikers are coming back to work. . . . This is not true. **Make sure and reinforce with your associates that they are permanent Kohler associates and any strike settlement would not affect that.**" (November 5, 2007 e-mail from Jerry Stone to foremen, administration and staff of the Searcy facility) (Emphasis added). As is clear from this e-mail, upper management ordered supervisors to orally promise and represent to Plaintiffs that they were permanent Kohler associates. Theses statements ordered by upper management were false and deceitful.

25.     At the time that Kohler was making these representations, Kohler knew the representations to be false. Kohler, in fact, intended to rehire all of the striking workers and needed the above-referenced Plaintiffs as replacement workers to keep the plant in operation until it could do so. Unbeknownst to Plaintiffs, Kohler was using the Plaintiffs as "pawns" in its chess game with the union. Despite its repeated assurances and representations, Kohler had no intention of making the above-referenced Plaintiffs permanent employees, and, through acts of fraud and deceit, induced Plaintiffs into believing statements known to be false when made by Kohler.

26.     Each of the above Plaintiffs, without prior notice, was terminated on March 6, 2008, effective immediately.

27.     In a written statement that was provided March 6, 2008 (the same day of the

7

termination) Jerry Stone stated: "It comes with a great degree of regret that we must inform you of your termination from Kohler Company as replacement employees effective Thursday, March 6, 2008. We understand this is difficult news for you to receive. On behalf of the entire management team, we would like to personally thank you for your efforts to Kohler Company's Searcy operation. We appreciate your dedication and past service to our organization." The letter goes on to state: "Under the new agreement that was ratified earlier today, **the striking workers are to be immediately reinstated to the former positions prior to the work shortage**." Exhibit 4 (Kohler 14) (Emphasis added).

28.     In short, Kohler reached an agreement with the union that provided that Kohler would return all striking workers to their previous jobs. As admitted by Kohler, this was not a determination made by the National Labor Relations Board. This was, in fact, a new agreement entered into on behalf of Kohler with the striking former employees to replace the Plaintiffs as employees. Thus, Kohler did exactly what it had previously guaranteed the Plaintiffs it would not do.

29.     Each of the above Plaintiffs was terminated immediately on March 6, 2008, without prior notice. The total number of employees terminated on March 6, 2008 exceeded one-third of the total work force employed at the Searcy site as of March 6, 2008 for purposes of the applicability of the WARN Act. The Plaintiffs immediately lost all benefits which they had been receiving as Kohler employees. Plaintiffs have either lost their insurance coverage or are being required to pay, in some instances, in excess of ten times the previous premium.

30.     The actions of Kohler violate the WARN Act in that Plaintiffs were not provided sixty days notice of the mass layoff.

31.     Kohler's actions entitle each of the above Plaintiffs to all damages allowed under the

WARN Act, including sixty days pay, sixty days of employee welfare and pension benefits or benefit reimbursement, costs and attorneys fees.

32.     In addition, Kohler's actions constitute a breach of unilateral contract, fraud, unjust enrichment, promissory estoppel, and civil conspiracy under Arkansas law entitling Plaintiffs to the damages more fully set forth below.

## COUNT I
## VIOLATIONS OF THE WARN ACT

33.     Paragraphs 1-32 are incorporated herein by reference as set forth word for word.

34.     Kohler qualifies as a "employer" as that term is defined in 29 U.S.C. § 2101(a)(1).

35.     Plaintiffs are "affected employees" as that term is defined in 29 U.S.C. § 2101(a)(5).

36.     The termination of Plaintiffs on March 6, 2008 constitutes a "mass layoff" as that term is defined in  29 U.S.C. § 2101(a)(3).

37.     The Defendant's mass layoff of the Plaintiffs without providing a sixty day written notice prior to the effective date of the layoff constitutes a violation of the provisions of the WARN Act,  29 U.S.C. § 2102(a).

38.     As a result of the Defendant's violation of the WARN Act, Plaintiffs are entitled to all damages available under the Act, including compensatory damages equal to back pay for each day of violation (60 days), as well as sixty days of benefits to which all Plaintiffs would have been entitled under the Kohler employee benefit plans, including the cost of all medical expenses incurred by the Plaintiffs during their employment loss which would have been covered under their employee benefit plain if the loss had not occurred.

39.     Kohler's actions were willful, wanton, committed with reckless disregard of the rights

of the Plaintiffs, and were committed with the specific intent and purpose to cause harm to the Plaintiffs. Accordingly, Plaintiffs are entitled to recover punitive damages under the WARN Act.

## COUNT II
## BREACH OF CONTRACT

40.     Paragraphs 1-39 are incorporated herein by reference as set forth word for word.

41.     Kohler offered Plaintiffs permanent full-time employment, with full benefits, at the Searcy Kohler facility in exchange for the Plaintiffs crossing the picket line, foregoing other job opportunities, subjecting themselves to intimidation, abuse, and harassment committed at the hands of the striking workers, and filling the employment positions at the facility offered by Kohler in order to allow Kohler's facility operations to continue.

42.     The contract offer required that the Plaintiffs cross the picket line and fill the replacement positions offered by Kohler. In return, Plaintiffs were to receive permanent, full-time positions with Kohler and were promised that they would not lose their positions to former employees returning from strike.

43.     Plaintiffs accepted this offer and relied upon Kohler's representations by taking these positions, performing work, and declining and foregoing other employment opportunities which were presented to them. In addition, in reliance upon these representations, Plaintiffs took on additional liabilities in the form of mortgages and automobile loans based upon Kohler's representations and under the expectation that they had permanent jobs to provide income that would satisfy the outstanding debt repayment obligations.

44.     The unilateral contract provided that all of the Plaintiffs have the status of "permanent replacement workers" and that Kohler would not release them from employment in order to create

10

job openings for the strikers to return.

45.     Plaintiffs did, in fact, fulfill their obligations by crossing the picket line and filling the positions offered by Kohler.  Plaintiffs accepted Kohler's offer by filling these positions.

46.     Kohler did not, in fact, honor their obligation to give the Plaintiffs permanent full-time positions at the facility and, to the contrary, terminated the Plaintiffs as part of the resolution of the union strike in order to create job openings for the strikers to return to.

47.     The Defendants failure to provide Plaintiffs with permanent full-time employment as promised constitutes a breach of contract entered into between the Plaintiffs and Defendant.

48.     The acts taken by Kohler described herein constitute a breach of the implied obligation of good faith and fair dealing present in the contractual relationship.

49.     As a result of said breaches, Plaintiffs have suffered and continue to suffer damages in the form of lost wages, lost benefits (including health insurance, disability insurance, and retirement benefits), and other incidental and consequential damages solely and directly caused by Kohler's breach.  Accordingly, Plaintiffs are entitled to recover from Kohler an amount in excess of that required for Federal Diversity Jurisdiction, as well as all attorneys' fees and costs associated with this action.

50.     Kohler's actions were willful, malicious and connected with its contractual agreement with Plaintiffs.  As such, Kohler's actions support an award of punitive damages in the amount to be determined by the jury.

## COUNT III
## FRAUD

51.     Paragraphs 1-50 are incorporated herein by reference as if set forth word for word.

52.     During the course of the relationship, Kohler made misrepresentations of fact and

omitted material facts which were necessary to make previous statement so fact, in light of the circumstances under which they were made, not misleading.

53.    Kohler, through its plant manger and other supervisors, made numerous oral and written statements that, in exchange for crossing the picket line, foregoing other employment opportunities, filling the replacement positions offered by Kohler and allowing the plant operations to continue, Plaintiffs would be considered permanent, full-time employees who would not be released from employment in order to create job openings for the strikers to return to upon resolution of the strike.

54.    At all times relevant herein, Kohler represented to Plaintiffs that it intended to fulfill all oral and written obligations undertaken with the Plaintiffs. These obligations included classifying the Plaintiffs as permanent full-time employees with the Searcy facility, paying them wages commensurate with their positions, and enrolling them in all welfare and retirement benefit plans offered by the company.

55.    Kohler breached its contractual agreement with the Plaintiffs. Kohler made these statements of material fact regarding the status of Plaintiffs as permanent employees with Kohler in order to induce the Plaintiffs to rely thereupon and to cross the picket lines, decline other employment opportunities, subject themselves to daily intimidation and harassment from union strikers, and perform work at the Kohler site in order to allow facility operations to continue uninterrupted. At the time that Kohler made these statements and omissions, it knew that the statements and omissions were false and deceitful and had no intent to fulfill its obligations.

56.    Kohler intended to induce Plaintiffs to act and refrain from acting in reliance upon these misrepresentations.

12

57.     The Plaintiffs justifiably relied upon the representations and as a result have suffered damages.

58.     The statements and omissions of Kohler were material and a substantial factor in influencing Plaintiffs' decisions.

59.     As a result of Kohler's fraudulent and deceitful actions, Plaintiffs have suffered damages in excess of that required for Federal Diversity Jurisdiction.

60.     Kohler's actions were willful, wanton, and intentional.  Defendant knew or should have known in light of the surrounding circumstances that its conduct would naturally and probably result in damage, and it continued such conduct with a reckless disregard of the consequences from which malice may be inferred.  Plaintiffs are, therefore, entitled to an award of punitive damages in an amount to be determined by the jury.

## COUNT IV
## UNJUST ENRICHMENT

61.     Paragraphs 1-60 are incorporated herein by reference as if set forth word for word

62.     As more specifically described above, Kohler engaged in improper acts and made false and deceitful statements in order to convince the Plaintiffs to cross the picket line, decline other employment opportunities, endure constant harassment and intimidation from the striking workers, and perform work in these positions offered by Kohler in an effort to continue the operations of the site without interruption and without loss of operating income or profits to the facility.

63.     Kohler developed a plan and committed overt acts in furtherance of this plan to improperly and unfairly convince the Plaintiffs to take the above listed actions without intending to rely upon its own representations.

13

64.     Kohler's actions were conducted improperly, for an improper purpose, in bad faith, and in a commercially unreasonable manner. The intended purpose of Kohler's actions was to continue the operations of the Search Kohler facility without interruption and without a loss of operating income or profits, without regard the consequences to Plaintiffs once the strike was resolved and the strikers were returned to the positions previously held by the replacement workers.

65.     In the absence of the improper conduct by Kohler, Kohler would have been required to significantly restrict or shut down the operations of its Searcy facility, thus incurring a substantial loss of operating income and profit. As a direct result of the improper conduct by Kohler, Kohler has received continued operating income and profits without recognizing its mutually reciprocal obligations to the Plaintiffs and has been unjustly enriched as a result. This unjust enrichment includes all Kohler operating income and profits from its Searcy facility as a result of the efforts and labor of the Plaintiffs, as well as the enhanced value and goodwill of the Kohler line of business associated with the product produced from the Searcy facility during this time period.

66.     Kohler is not entitled to this enrichment, and this enrichment was obtained at the expense of and to the detriment of Plaintiffs. Therefore, Kohler should restore this unjust enrichment to Plaintiffs.

67.     The above described actions of Kohler, taken separately or in concert with each other, constitute the operative acts, the requisite intent, and the situation necessary in order to make Kohler's enrichment unjust and compensable.

68.     Under principals of equity and justice, Kohler should restore the above described enrichment to Plaintiffs in an amount in excess of that required for Federal Diversity Jurisdiction. Because Plaintiffs are the persons who naturally deserve the above described enrichment, and because

Kohler committed wrongful acts in order to obtain this enrichment, the restoration of this enrichment to Plaintiffs does not violate or frustrate any law and is not in opposition to any public policy of this state.

**COUNT V**
**PROMISSORY ESTOPPEL**

69.      Paragraphs 1-68 are incorporated herein by reference as set forth word for word.

70.      As set forth above, Kohler made numerous representations that Plaintiffs would be classified as permanent full-time employees of the Searcy facility if they crossed the picket line and filled the positions offered by Kohler in an effort to continue the operations of that facility without interruption.

71.      In direct and reasonable reliance upon Kohler's representations, Plaintiffs declined other employment opportunities, accepted employment with Kohler, and performed their functions admirably everyday subject to extreme harassment and intimidation by the striking union workers.

72.      In addition to the above described reliance, certain Plaintiffs executed mortgage applications and applied for automobile loans and incurred other financial obligations with the understanding that they had permanent employment which would provide them with the income necessary to make the loan repayments. In fact, upon inquiry by various lenders to Kohler as to the status of individual employees/loan applicants, Kohler represented to said lenders that the employees were in fact permanent employees.

73.      In addition to the above described reliance, many Plaintiffs got married and/or had children, and/or enrolled their children and/or spouses in the company's health insurance program, believing that these children and/or spouses would be covered thereunder.

15

74.     As a direct result of Kohler's promises, Plaintiffs' reliance on those promises, and Kohler's failure to fulfill those promises, Plaintiffs have suffered damages in excess of that required for Federal Diversity Jurisdiction. Plaintiffs are also entitled to recover all attorneys' fees, costs and expenses incurred in this matter.

## COUNT VI
## CIVIL CONSPIRACY

75.     Paragraphs 1-74 are incorporated herein by reference as set forth word for word.

76.     Kohler entered into an agreement with the UAW, a non-party co-conspirator, whereby they conspired by illegal, unlawful and improper means to terminate Plaintiffs' permanent employment with Kohler (without pay or benefits) in order to create permanent job positions for the returning strikers. Both Kohler and the Union took overt acts to conceal this plan from Plaintiffs until the arrangements for their immediate termination could be made.

77.     In furtherance of this agreement, Kohler developed a plan and committed overt acts and underlying wrongs in furtherance of that plan to effectuate an unlawful, illegal and improper result including the termination of Plaintiffs' permanent employment with Kohler.

78.     Kohler's actions were conducted improperly, for an improper purpose, in bad faith, in a commercially unreasonable manner and with the intent to seek unjust enrichment at the Plaintiffs' expense and to interfere with Plaintiffs' existing contractual rights and expectancies.

79.     The agreement between Kohler and the UAW constitutes a civil conspiracy under Arkansas law and was conducted for the purpose of interfering with Plaintiffs' ongoing contractual relationship with Kohler and to achieve unjust enrichment at the Plaintiffs' expense as a result of the improper misrepresentations made to them in order to convince them to fill the positions which it offered.

16

80.     Kohler engaged in acts which were improper and conducted in furtherance of the civil conspiracy to illegally and improperly terminate the Plaintiffs' permanent employment in order to create positions for the returning strikers.

81.     The agreement between Kohler and UAW was unlawful and carried out for an unlawful purpose resulting in direct monetary damage to the Plaintiffs.

82.     The agreement to enter into the civil conspiracy and the actions taken by Kohler in carrying out the unlawful purpose of the conspiracy were conducted maliciously, willfully and wantonly and for the purpose of achieving unjust enrichment at Plaintiffs' expense, for the purpose of illegally and improperly terminating the Plaintiffs' permanent employment with Kohler, and for the purpose of interfering with the Plaintiffs' ongoing contractual relationship with Kohler.

83.     As a direct result of the improper actions of Kohler, Plaintiffs have been damaged in an amount in excess of that required for Federal Diversity Jurisdiction.

84.     The actions of the Defendant were conducted maliciously, willfully and wantonly with the intent to achieve an improper purpose.  As a result, Plaintiffs are entitled to recover punitive damages in an amount to be determined by the jury.

## DAMAGES

85.     Paragraphs 1-84 are incorporated herein by reference as set forth word for word.

86.     Each of the above Plaintiffs have suffered and are entitled to recover for one or more of the following elements of damages which were approximately caused by Defendant's wrongful acts:

      (a)     Sixty days back pay and benefits under the WARN Act;

      (b)     Back pay in the form of lost wages and benefits from the date of termination

until the date of judgment;

(c)     Front pay in the form of future wages and benefits until each employees' return to gainful employment at equal pay and benefits or expected retirement date;

(d)     Reimbursement for all moneys expended to replace insurance coverage;

(e)     Reimbursement for all medical expenses incurred during any period during which Plaintiffs' insurance was or is not in effect;

(f)     Repayment of all interest, penalties, costs, foreclosures or losses charged or initiated by third parties to whom one or more Plaintiffs may have incurred debt based upon Defendant's representations;

(g)     Disgorgement of all operating income and profits during the period of the strike to be paid to the Plaintiffs herein in the form of unjust enrichment compensation;

(h)     All other damages sustained by Plaintiffs in reliance on Kohler's misrepresentations or as a result of Kohler's misconduct as set forth above;

(i)     Punitive damages in an amount to be determined by the jury;

(j)     Attorneys' fees;

(k)     Costs; and

(l)     All other just and proper legal and equitable relief.

87.     Plaintiffs hereby demand a trial by jury.

WHEREFORE, Plaintiffs respectfully request that they be awarded judgment for damages against Kohler to be determined at the trial of this matter, punitive damages, attorneys' fees, costs, expenses, prejudgment interest from the date of the breach, and post-judgment interest from the date of satisfaction of any resulting judgment at the highest rate allowed under Arkansas law.

Respectfully Submitted,

Scott J. Lancaster #85087
Tony L. Wilcox #93084
Brandon W. Lacy #03098
**WILCOX LANCASTER & LACY, PLC**
601 S. Church
Jonesboro, AR 72401

By: _____
Scott J. Lancaster #85087

19



**ARKANSAS SINK OPERATIONS**

March 6, 2007

Dear Fellow Kohler Co. Associate:

On behalf of the entire management team, I would like to thank you again for your efforts and your dedication to Kohler Co.'s Searcy operation. We are very pleased to have you as part of the Kohler organization. Working together, the plant clearly has a very bright future.

On this note, some of you have raised the question on your status with the company. So I wanted to take this opportunity to answer that question for all of you. Kohler Co. is taking the position that all of you have the status of permanent replacement workers because the strike called by UAW is an economic strike. What this means is that if and when this economic strike comes to an end, the company will not release you from employment in order to create job openings for the strikers to return to.

While this is the company's position, legal issues also require that I advise you that the UAW has filed unfair labor practice charges against Kohler Co. with the National Labor Relations Board. The union's position is that the strike is an unfair labor practice strike, not an economic strike. The company does not believe that there is any merit to these charges and it will be vigorously defending itself against them. But if there is a Board finding or a settlement that the strike is an unfair labor practice strike or that otherwise requires the company to return the strikers to work, the company will be legally bound to release you from employment to the extent necessary to create openings for any strikers who may want to return to work.

I hope that this answers your questions on your status with Kohler Co. However, if you need any further information, please feel free to speak directly to me or Mary Johnson. You are a valued member of the Kohler Co. team. Again, thank you for your efforts.

Sincerely,

Jerry Stone
Plant Manager

Mary Johnson
Human Resource Manager



EXHIBIT
1

August 16, 2007



ARKANSAS SINK OPERATIONS

Dear Kohler Co. Associate,

For those of you that I have not yet had the opportunity to meet, I would like to introduce myself to you. I am Brian Drescher the Director – Global Operations for Cast Iron and Stainless Steel. In short, I am responsible for the Kohler facilities that produce all of the sinks, lavatories, and bathtubs from both Cast Iron and Stainless Steel. I have been with Kohler Co. for 31 years, and have been involved in Cast Iron and Stainless Steel for nearly 20 years. It truly has been a wonderful experience, and one that I hope you will enjoy for many years as well.

I am writing you today for several reasons:

First off, I would like to welcome you as a valued associate to the Kohler Co., and welcome you to the Searcy Arkansas Stainless Steel facility. While I may lead the overall group, Jerry Stone, your Plant Manager, and his exceptional team, are the ones who really lead the effort on a daily basis. However, the facility would not be able to make high quality sinks and lavs without dedicated associates like you who produce product each and every day.

Kohler Co. is truly a customer focused company, which means that we strive to deliver quality products to our customers, when they want it, 100% of the time. Consumers are less tolerant of product shortages these days than they were in the past, as there are plenty of available alternatives. Our Wholesale customers, like your local plumbing supplier, truly depend upon us to deliver products quickly in order to complete a sale. The Searcy operation primarily supports our Wholesale customers, thus we need to insure that they get product on time.

Meeting our customer's needs is not always an easy task. They expect us to ship their order complete within 10-14 days. Our competition, Elkay and Franke are presently doing that, and we are not...at this time. Before the Searcy work stoppage, Kohler had a significant amount of inventory set aside in order to insure consistent deliveries. Most of that inventory has been sold, and we have been in a ramp up mode to get back to delivering in 14 days. With your help, we have been making solid progress! It certainly doesn't help when the outside temperatures reach 105F, for weeks at a time. The new ventilation systems have helped but can't overcome the extraordinary heat that has affected the area. We will continue to look for ways to improve the air flow within the facility, and are open to your ideas and suggestions on ways to stay cool.

I wanted to thank you for your dedication, support, and understanding as we work extra hours to meet our customers needs. We are in a catch-up mode right now, and believe that we will be totally caught up in another month. We will then be able to get back to a normal work schedule. I truly appreciate your understanding and ask for it a little while longer. While we are focusing on production, we don't want to lose sight that we need to do it in a safe manner. Safety will always remain as our highest priority. Please do not take any chances, and advise your fellow associates if you see that they could be doing something in a safer manner. Our Safety motto is, "Safety is Everybody's Responsibility".

Lastly I also want to thank your family for the sacrifices they are making to allow you to work extra hours to support our customer's needs. It goes without saying that without the support from home you could not make the commitments to work that you do. So please thank your loved ones on behalf of Kohler Company.

Please feel free to communicate your thoughts and ideas to any member of management, or even myself as I visit the plant, as we want to make Kohler-Searcy "The place to work". I know that the Searcy management team is extremely happy to have you on board! Together we can help the plant continue to improve to new levels of productivity and delivery performance. I know we can get there quickly if we all work together.

Kohler Co. is a remarkable company where many associates spend their entire careers. I hope that you find your job rewarding so that you will stay at Kohler for a long time.

Sincerely,

Brian R. Drescher
Brian R. Drescher
Dir. Global Operations – Cast Iron & Stainless Steel

EXHIBIT
2

KOHLER   15

**Gordon Darren**

| | |
|---|---|
| **From:** | Stone Jerry |
| **Sent:** | Monday, November 05, 2007 6:37 AM |
| **To:** | STSE - Admin Support; STSE - Foremen - Searcy; STSE - STAFF - Searcy |
| **Cc:** | Drescher Brian |
| **Subject:** | Daily Report |

**Attachments:**    October Daily Report.xls

Safety - No incidents to report. Zero recordable injuries for November...let's drive for a perfect month!

October Daily
Report.xls (23 K...

Solid start the first two days. We have ourselves in a slight hold on financials, but not anything like we did last month. We expected this due to pulling out all the stops in draw to drive absorption at the end of October...now we have to get on track and get even. I hope everyone enjoyed their weekend off. Let's get things going smoothly this morning.

I have heard the rumors on the floor. Basically, the rumor is that the strike has been settled and that the strikers are coming back to work with backpay for the entire time they have been on strike. This is not true. Make sure and reinforce with your associates that they are permanent Kohler associates and any strike settlement would not affect that.

Jerry L. Stone
Plant Manager-Searcy
Kohler Company
501-268-3521

K 817
Y 56
A 319



KOHLER    52

March 6, 2008

Dear Associate:

It comes with a great degree of regret that we must inform you of your termination from Kohler Co. as a replacement employee effective Thursday, March 6. We understand that this is difficult news for you to receive. On behalf of the entire management team, we would like to personally thank you for your efforts to Kohler Co.'s Searcy operation. We appreciate your dedication and past service to our organization.

The company was ordered back to the negotiating table by a National Labor Relations Board judge to reach an agreement with United Auto Workers Local 1000. Under the new agreement that was ratified earlier today, the striking workers are to be immediately reinstated to their former positions prior to the work stoppage.

Last year, the union filed unfair labor practice charges against Kohler, claiming that the strike was an unfair labor practice strike, not an economic strike. At the time of your hire last year, we informed you that if there was a finding or settlement that the strike is an unfair labor practice strike, or if a contract agreement was reached between the company and the union that required us to return the striking employees to work, we would be legally bound to release you from employment.

Please know that Kohler Co. will keep your job application on file should there be future openings, and that you are eligible to apply for unemployment benefits. If you have any further questions or need any additional information, please feel free to speak directly to me or Mary Johnson. Again, we thank you for your efforts this past year.

Sincerely,

Jerry Stone
Plant Manager



EXHIBIT
4

KOHLER  14